**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES, | |
| v. | Criminal Action No. 11-356 (RDM) |
| IRFAN DEMIRTAS, | |
| *Defendant*. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant's emergency motion for compassionate release, Dkt. 109, which is opposed, Dkt. 114. For the reasons explained below, the Court will **DENY** the motion without prejudice.

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, a court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," the court finds (1) that "extraordinary and compelling reasons warrant such a reduction" and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[1] 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Ayers*, No. 8-364, 2020 U.S. Dist. LEXIS 95504, at *2 (D.D.C. June 1, 2020). As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A). *Id.*

---

[1] Section 3582(c)(1)(A) also requires that a defendant exhaust his administrative remedies before seeking compassionate release in district court. *See Ayers*, 2020 U.S. Dist. LEXIS 95504, at *4 n.1. Here, the government does not dispute that Demirtas satisfied that requirement. *See* Dkt. 114 at 6 n.9. ("In light of the Warden's denial of the defendant's request, the government is not arguing in this case that the defendant has failed to exhaust his administrative remedies.").

As a threshold matter, the parties dispute whether the "extraordinary and compelling reasons" that might support the Court's compassionate release decision in this case are limited to those specified in § 1B1.13(1)(A) and commentary note 1(A) of the Sentencing Commission's policy statement. The government argues that because Demirtas relies on his medical condition to support his application, the Court is limited to the circumstances specified in commentary note 1(A), *see* Dkt. 114 at 13—that is, Demirtas must show (1) that he has either (a) a "terminal illness" or (b) "a serious physical or medical condition," "serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process" and (2) that such an illness or condition "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." USSC § 1B1.13, cmt. n. 1(A). Demirtas, in contrast, argues that the Court may also rely on the catchall provision contained in commentary note 1(D), *see* Dkt. 115 at 2—that is, the Court may grant compassionate release if "there exists in the defendant's case an extraordinary and compelling reason [for release] other than, or in combination with, the reasons described in subdivisions (A) through (C)" of the commentary. USSC § 1B1.13, cmt. n. 1(D). Although the catchall provision grants the Director of the Bureau of Prisons the authority to "determine[]" whether such "other" reasons exist, *id*., Demirtas posits (with considerable force) that the reference to the Director of the Bureau of Prisons and lack of reference to the district court is merely an anachronism resulting from the fact that the policy statement was adopted before the district courts were vested with authority to make compassionate release determinations under the First Step Act. *See* Dkt. 109 at 8–9.

"[W]hether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director" of the Bureau of Prisons has divided the courts that have

addressed that question to date. *See United States v. Hawkins*, No. 14-106-02, 2020 U.S. Dist. LEXIS 104755, at *6 (W.D. Pa. June 16, 2020) (collecting cases). For present purposes, the Court need not join this debate because, even assuming that the Court has discretion to grant compassionate release for "extraordinary and compelling reasons" not specified in commentary notes (A) through (C), Demirtas has not shown that he is entitled to relief. In arguing that "extraordinary and compelling" circumstances warrant his release, Demirtas relies on his age, asthma, allergies, language limitations, and the COVID-19 pandemic. *See* Dkt. 109 at 18, 21. But none of these circumstances, either individually or collectively, constitute extraordinary and compelling reasons to release Demirtas—at least based on the facts as they now stand.

Starting with his asthma and allergies, three points weigh against relief. First, it is an open question whether asthma and allergies, standing alone, place people at a higher risk of severe illness or death resulting from COVID-19. In its most recent guidance, the Centers for Disease Control ("CDC") states that people with certain underlying medical conditions "*are* at a increased risk of severe illness from COVID-19," while people with certain other medical conditions "*might be* at an increased risk."[2] *People of Any Age with Underlying Medical Conditions*, Ctr. Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (the CDC updated this guidance on June 25, 2020) (emphasis added). People with moderate to severe asthma fall into the latter category; allergies are not mentioned at all. *Id.*; *see also COVID-19 and Asthma: What Patients*

---

[2] The Court takes judicial notice of the material contained on the CDC website. Fed. R. Evid. 201(b), (f).

*Need to Know*, Am. Acad. of Allergy Asthma & Immunology, available at

https://www.aaaai.org/conditions-and-treatments/library/asthma-library/covid-asthma (last

accessed June 25, 2020) ("[A]lthough the Centers for Disease Control and Prevention states that

patients with moderate-severe asthma could be at greater risk for more severe disease, there are

no published data to support this determination at this time.");[3] Danny Hakim, *Asthma Is Absent*

*Among Top Covid-19 Risk Factors, Early Data Shows*, N.Y. Times (Apr. 16, 2020), available at

https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html) (reporting that data

from New York indicates that asthma was under-represented in those who died from COVID-

19).

Second, even assuming that persons with moderate to severe asthma are at higher risk of

severe illness or death from COVID-19, Demirtas has not carried his burden of establishing that

his asthma is moderate to severe.  He relies in large part on the fact that he was placed on

disability in the Netherlands due to his asthma and allergies. Dkt. 115 at 3.  The government

urges the Court to give little weight to this evidence because Demirtas has only self-reported

what occurred in the Netherlands. Dkt. 114 at 17.  But even assuming that Demirtas has

accurately conveyed this history, it is stale and sheds little light on the severity of his current

condition.  Demirtas also relies on an assessment by BOP medical staff, which estimates that his

asthma fluctuates "between mild persistent and moderate persistent asthma." Dkt. 115 at 3.

Even construing that evidence in his favor (which is not the proper allocation of the burden of

proof), it shows at most that he *sometimes* suffers from moderate asthma.  Finally, Demirtas

---

[3]  The American Academy of Allergy Asthma & Immunology is a professional medical membership organization of with more than 7,000 members that includes allergist, immunologists, and other medical specialists. *See About the AAAAI*, available at https://www.aaaai.org/about-aaaai (last accessed June 23, 2020).

relies on the fact that allegedly he uses an albuterol inhaler several times a day. Dkt. 109 at 4. The government responds that albuterol inhalers are not prescribed for daily use, Dkt. 114-8 at 1 (Decl. of Michael Moclock, MD at ¶ 4), and that, in fact, Demirtas was instructed not to use his inhaler daily, Dkt. 110, Ex. C, at 29, 82. According to the government's expert, the fact that Demirtas was prescribed an albuterol inhaler suggests that his asthma is best categorized as "mild persistent," Dkt. 114 at 1 (Decl. of Michael Moclock, MD at ¶ 4), and the government further stresses that the medical records that Demirtas has proffered do not refer to any acute asthma attacks occurring in the course of his incarceration. Demirtas counters that the reason he uses the albuterol inhaler on a daily basis is that it is not working, which suggests that his asthma is not mild. Dkt. 115 at 4. Without additional evidence, the Court is left to speculate whether Demirtas's frequent inhaler use is due to the severity of his conditions or due to his improper or inconsistent use.

Third, even assuming that Demirtas suffers from moderate asthma, there is no evidence that he suffers from any other medical conditions that might make him unusually vulnerable to COVID-19. As the government notes, in the cases Demirtas cites in his brief, "the defendants had high-risk factors in addition to asthma[] or were in settings where there were active COVID-19 outbreaks." Dkt. 114 at 16 n.16. Here, neither circumstance is present. To be sure, at 60 years old, Demirtas faces a greater risk than younger inmates. *See Older Adults*, Ctr. Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed June 25, 2020) ("Among adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk."). But he is not yet 65 or older, which is the age group the CDC has indicated is most at risk. *See id.* (reporting that "8 out of 10 COVID-19-related deaths reported in the United States have been among adults

aged 65 years and older"). Seeking to escape that conclusion, Demirtas argues that his physiological age is probably 10 to 15 years older because he is part of the prison population. Dkt. 115 at 5 (citing evidence that the prison population is physiologically 10 to 15 years older than the general population). But that argument has little force here. Demirtas has offered no evidence that he has endured a physiologically taxing lifestyle similar to large portions of the prison population. *Cf.* Dkt. 93 at 12–13 (indicating that Demirtas had a stable childhood and adult life with little to no history of violence or substance abuse).

Moreover, Defendant is currently incarcerated at Allenwood Low Security Correctional Institution in Allenwood, Pennsylvania ("Allenwood Low"). To date, no staff or inmates at that facility have tested positive for COVID-19. *See* Dkt. 109 at 18 (conceding this fact). Although Demirtas notes that two correctional officers who work at *other* sections of the Allenwood facility have tested positive, the government represents "that as a result of BOP's COVID-19 precautions, BOP personnel are not moving between the different facilities at Allenwood." Dkt. 114 at 19. Of course, the current lack of positive cases at the facility does not mean that it will not have cases in the future (or even that it currently has undetected cases); but the evidence "suggests that the BOP's protective measures at that facility are working," *Holroyd*, 2020 U.S. Dist. LEXIS 91435, at \*10, or have at least minimized the spread of the virus. The cases that Demirtas cites in which prisoners were released from facilities with no reported COVID-19 cases are not to the contrary. *See* Dkt. 109 at 20–21. In those cases, the prisoners were at least 10 years older and suffered from several conditions that made them particularly vulnerable to COVID-19. *See, e.g.*, *United States v. Ben-Yhwh*, No. 15-830, 2020 WL 1874125, at \*5 (D. Haw. Apr. 13, 2020) (73-year-old prisoner that suffered from Parkinson's, asthma, and diabetes); *United States v. Asaro*, No. 17-127, 2020 WL 1899221, at \*5 (E.D.N.Y. Apr. 17, 2020) (85-year-

6

old prisoner that had suffered a stroke the previous year and had numerous conditions that contributed to his deteriorating health); *United States v. Burrill*, No. 17-CR-491-1, 2020 WL 1846788, at *1 (N.D. Cal. Apr. 10, 2020) (75-year-old that suffered from numerous conditions including "asthma, high blood pressure, high cholesterol, diabetes, diverticulosis, [and] blood clots"). As the government concedes, if circumstances at Allenwood Low change or if Demirtas's health deteriorates, he may renew his request for compassionate release. But, on the current record, the absence of any confirmed cases of COVID-19 at Allenwood Low weighs against granting compassionate release based solely on Demirtas's asthma.

Finally, Demirtas argues that he is at risk because Allenwood Low does not have a Turkish interpreter who would be available to ensure that he receives prompt and appropriate medical care should he contract the virus. *See* Dkt. 109 at 3–4. The Court is again unpersuaded on the current record. Demirtas offers no persuasive examples or evidence that any language barrier has impeded his ability to care for himself in prison or otherwise made him more vulnerable to the virus. Indeed, despite his limited knowledge of English, Demirtas was able to submit a handwritten application for compassionate release. *Id.* at 4–5. Moreover, as the government highlighted at oral argument, there is evidence in the record that the prison has obtained a translator at times, *see, e.g.*, Dkt. 113 at 1 ("Translator service used: Language: Turkish"), and that, at other times, Demirtas was able to receive medical care without the benefit of a Turkish-language interpreter.

The Court does not diminish the "seriousness of the pandemic," *United States v. Skelos*, 2020 U.S. Dist. LEXIS 85986, at *7 (S.D.N.Y. May 15, 2020), or the legitimate concern that Demirtas has about his health and safety. As the record currently stands, however, the Court cannot find that extraordinary and compelling circumstances justify Demirtas's early release. As

a result, the Court need not—and will not—consider the sentencing factors set forth in 18 U.S.C. § 3553(a) or whether Demirtas would pose a danger to the community as provided in 18 U.S.C. § 3142(g). *See Skelos*, 2020 U.S. Dist. LEXIS 85986, at \*7. If conditions at Allenwood Low change, new health concerns emerge, or new evidence becomes available, Demirtas may renew his motion at that time.

Accordingly, Defendant's motion for compassionate release is hereby **DENIED** without prejudice.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 25, 2020